# Third District Court of Appeal

## State of Florida

Opinion filed April 13, 2016.

_____

No. 3D14-575
Lower Tribunal No. 12-49315

_____

## Deutsche Bank Trust Company Americas, as Indenture Trustee for American Home Mortgage Investment Trust 2006-2,
Appellant,

vs.

## Harry Beauvais, and Aqua Master Association, Inc., a non-profit Florida corporation,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

K&L Gates, and David R. Fine (Harrisburg, PA) and William P. McCaughan, Steven R. Weinstein and Stephanie N. Moot, for appellant.

Siegfried, Rivera, Hyman, Lerner, De La Torre, Mars & Sobel and Steven M. Siegfried and Nicholas D. Siegfried; Wallen Hernandez Lee Martinez, and Todd L. Wallen, for appellee, Aqua Master Association, Inc.

Ausley McMullen and Major B. Harding; Hargrove Law Group and John R. Hargrove, for Baywinds Community Association, Inc., as amicus curiae.

Levine Kellogg Lehman Schneider + Grossman, and Stephanie Reed Traband and Victor Petrescu, for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, as amici curiae.

Morgan, Lewis & Bockius, and Robert M. Brochin, Joshua C. Prever and Christopher K. Smith, for Mortgage Bankers Association of South Florida, as amicus curiae.

Matthew Estevez, for Community Associations Institute, as amicus curiae.

Jacksonville Area Legal Aid and Lynn Drysdale, for the National Association of Consumer Advocates, the National Consumer Law Center and the Jerome N. Frank Legal Services Organization at the Yale Law School, as amici curiae.

Gilbert Garcia Group, Michelle G. Gilbert, Jennifer Lima-Smith and Nicholas R. Cavallaro; Gladstone Law Group, Andrea R. Tromberg and Jason F. Joseph; Robertson, Anschutz & Schneid, Robert R. Edwards and Jessica P. Quiggle; Kass Shuler, Melissa A. Giasi and Richard S. McIver; Elizabeth R. Wellborn; Brock and Scott, Shaib Y. Rios and Curtis J. Herbert, for the American Legal and Financial Network, as amicus curiae.

McGlinchey Stafford, and Manuel Farach, for the Business Law Section of the Florida Bar, as amicus curiae.

Goldman Felcoski & Stone, and Robert W. Goldman; Gunster, and Kenneth B. Bell and John W. Little, III, for the Real Property Probate & Trust Law Section of The Florida Bar, as amicus curiae.

Crabtree & Auslander, and John G. Crabtree, Charles Auslander, George R. Baise, Jr., and Brian C. Tackenberg; Alice Vickers and Bryant H. Dunivan, Jr., for Florida Alliance for Consumer Protection, as amicus curiae.

Before SUAREZ, C.J., and WELLS, SHEPHERD, ROTHENBERG, LAGOA, SALTER, EMAS, FERNANDEZ, LOGUE and SCALES, JJ.

### *ON MOTION FOR REHEARING EN BANC OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION*

2

WELLS, Judge.

We grant rehearing en banc, withdraw our prior opinion in Deutsche Bank Trust Co. America v. Beauvais, 40 Fla. L. Weekly D1 (Fla. 3d DCA Dec. 17, 2014), and substitute this opinion in its stead.

Deutsche Bank appeals from a final summary judgment denying foreclosure of a mortgage securing a $1,440,000 promissory note executed in the bank's favor by borrower Harry Beauvais. The complaint filed by the bank on December 18, 2012, alleged entitlement to relief by virtue of Beauvais' failure to pay an installment payment due on October 1, 2006, "and all subsequent payments." The complaint, in addition to naming Beauvais, joined a number of entities with potential interests in the property securing the bank's loan including the Aqua Master Association, Inc., the condominium association for the premises at issue.

By the time this action was commenced, Beauvais no longer held title to the condominium securing payment of this loan, his interest having been foreclosed and title transferred in 2011 to Aqua to satisfy outstanding condominium assessments. Beauvais, with no interest in the property, filed no answer to the bank's complaint and asserted no defenses to foreclosure of the bank's loan. The bank moved for a default; however, none appears to have been entered. Aqua, on the other hand, now title holder of the property securing the bank's loan, filed an

3

answer and affirmative defenses in which it alleged that the instant action was barred by the five year statute of limitations governing mortgage foreclosures. See § 95.11(2)(c), Fla. Stat. (2013). According to Aqua, the bank's cause of action for foreclosure accrued in 2007 when the bank's predecessor in interest accelerated the balance due on the loan by filing a prior suit to collect on a September 1, 2006 default,[1] and because the bank failed to pursue foreclosure within five years of that acceleration/accrual after the first suit was dismissed, the instant action was time barred.

The trial court agreed and granted judgment in Aqua's favor:

> The previous mortgage holder filed suit against borrower [Beauvais] and the Association on January 23, 2007, alleg[ing] that the borrower defaulted on the mortgage and elected to accelerate payment of the balance due on the note and mortgage. The prior complaint specifically declared the full amount payable under the note and mortgage, $1,439,976.80, to be due. However, the action was dismissed without prejudice on plaintiff's non-appearance at initial case management conference on December 6, 2010. On December 12, 2012, Plaintiff filed the instant suit to foreclose the mortgage. The complaint called for the entire balance of $1,439,976.80, to be due.

> Association is correct that the filing of the prior lawsuit in 2007 triggered the running of the statute of limitations with respect to the entire balance of the mortgage and note. The case to which the Plaintiff cites, Singleton v. Greymar Assoc., 882 So. 2d 1004 (Fla. 2004), is inapposite and concerns only the application of res judicata in an action to collect discrete payments under an installment contract. Singleton is not only distinguishable from the facts of the instant case,

---

[1] American Home Mortgage Servicing, Inc. v. Harry Beauvais et. al., Case No 07-02054 CA 10.

4

it is wholly irrelevant to the issue of the statute of limitations raised by the Association.

It is the determination of this Court that the right to accelerate was exercised by the filing of the prior lawsuit on January 23, 2007. Since more than five years elapsed between the acceleration and the filing of the underlying suit, the action is barred by the statute of limitations. See § 95.11(2)(c), Fla. Stat. . . .

The bank appeals. We reverse because we, like our sister courts, find the Florida Supreme Court's decision in Singleton v. Greymar Associates, 882 So. 2d 1004 (Fla. 2004), applicable to the instant action, and that it mandates reversal. See Evergrene Partners, Inc. v. Citibank, N.A., 143 So. 3d 954, 956 (Fla. 4th DCA 2014) (applying Singleton and concluding that the statute of limitations would not bar foreclosure of an accelerated loan where an earlier, voluntarily dismissed, foreclosure had been brought to enforce the same loan accelerated for a separate default); see also Nationstar Mortg., LLC v. Brown, 175 So. 3d 833, 834-35 (Fla. 1st DCA 2015) (applying Singleton to hold that the statute of limitations did not bar an action to foreclose an accelerated loan brought more than five years after a prior action to foreclose on the same accelerated loan had been brought but then voluntarily dismissed without prejudice); accord Hicks v. Wells Fargo Bank, N.A., 178 So. 3d 957, 959 (Fla. 5th DCA 2015) (citing Singleton and concluding "we reject Homeowners' implication in their brief that Bank is now forever barred from bringing an action to foreclose. Despite the previous acceleration of the balance owed in both the instant suit and prior suit, Bank is not precluded from filing a new

5

foreclosure action based on different acts or dates of default not previously alleged, provided that the subsequent foreclosure action on the subsequent defaults is brought within the statute of limitations period found in section 95.11(2)(c), Florida Statutes").

**1. Application of _Singleton_ to the instant case.**

*a. _Singleton_ allows for multiple actions for individual defaults with accompanying accelerations.*

In Singleton, the Florida Supreme Court held that "successive foreclosure suits, regardless of whether or not the mortgagee sought to accelerate payments on the note in the first suit," were not barred if, as here, the second suit was predicated on a new default because a "subsequent and separate alleged default create[s] a *new* default and *independent right* in the mortgagee *to accelerate payment on the note in a subsequent foreclosure action.*" Singleton, 882 So. 2d at 1008 (emphasis added); see, e.g., PNC Bank, NA v. Neal, 147 So. 3d 32, 32 (Fla. 1st DCA 2013) (stating that "the dismissal with prejudice of PNC Bank's foreclosure action . . . does not preclude PNC Bank from instituting a new foreclosure action based on a different act or a new date of default not alleged in the dismissed action"); Star Funding Solutions, LLC v. Krondes, 101 So. 3d 403, 403 (Fla. 4th DCA 2012) (citing Singleton as support for the conclusion that dismissal with prejudice of the instant action would have no impact on a subsequent foreclosure action because "[a] new default, based on a different act or date of default not alleged in the

6

dismissed action, creates a new cause of action"); <u>Olympia Mortg. Corp. v. Pugh</u>, 774 So. 2d 863, 867 (Fla. 4th DCA 2000) (confirming that voluntary dismissal of a foreclosure action on an accelerated mortgage and note did not bar a subsequent action on a later default); <u>accord</u> <u>St. Louis Condo. Ass'n, Inc. v. Nationstar Mortg. LLC</u>, No. 14-21827-CIV, 2014 WL 6694780, at *2 (S.D. Fla. Nov. 26, 2014) ("When a 'mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee's foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure actions-and to seek acceleration of the entire debt-so long as they are based on separate defaults.' <u>Dorta v. Wilmington Trust Nat'l Assoc.</u>, 13–cv–185–Oc–10PRL, 2014 WL 1152917, at *2–4 (M.D. Fla. Mar. 24, 2014) (relying on <u>Singleton v. Greymar Assoc.</u>, 882 So. 2d 1004 (Fla. 2004) (per curium [sic])). Contrary to Plaintiff's assertions, 'an unsuccessful foreclosure action does not subsequently render a mortgage forever invalid and unenforceable.' <u>Id.</u> Rather, the Note and Mortgage remain enforceable and Defendant still has the right to file foreclosure actions based on separate defaults."); <u>Diaz v. Deutsche Bank Nat'l Trust Co.</u>, No. 14-22583-CIV, 2014 WL 4351411, at *3 (S.D. Fla. Sept. 2, 2014).[2, 3]

---

[2] <u>See generally</u> <u>In re Rogers Townsend & Thomas, PC</u>, 773 S.E. 2d 101, 106 (N.C. Ct. App. 2015), referring to <u>Singleton's</u> conclusion that a subsequent and separate alleged default created a new and independent right in the lender to accelerate payment on a note in a subsequent foreclosure action, and concluding:

We recognize that this view of foreclosure actions involving

7

*b. Singleton considered the view that an acceleration of payments once put at*

acceleration on a note is not universal. See <u>U.S. Bank Natl. Assn. v. Gullotta</u>, 120 Ohio St. 3d 399, 405, 899 N.E. 2d 987, 992 (2008) (holding that each missed payment under a promissory note and mortgage did not give rise to a new claim because "[o]nce [the borrower] defaulted and [the lender] invoked the acceleration clause of the note, the . . . obligations to pay each installment merged into one obligation to pay the entire balance on the note"). Even so, <u>Singleton's</u> pronouncement that an "acceleration and foreclosure [action] predicated upon subsequent and different defaults present[s] a separate and distinct" claim expresses the better reasoned view. 882 So. 2d at 1007.

[3] This analysis of <u>Singleton</u> neither undermines nor contradicts prior Florida Supreme Court or other Florida precedent, including the Supreme Court's decision in <u>Travis Co. v. Mayes</u>, 36 So. 2d 264, 265-66 (Fla. 1948). <u>Travis</u> does no more than stand for the unremarkable proposition that when considering a mortgage that contains an automatic acceleration clause "[t]he law is well settled that the Statute of Limitations begins to run against a mortgage at the time the right to foreclose accrues. The rule is also settled that when a mortgage in terms declares the entire indebtedness due upon default of certain of its provisions or within a reasonable time thereafter, the Statute of Limitations begins to run immediately [when] the default takes place or the time intervenes." <u>Travis</u>, 36 So. 2d at 376-77 (citations omitted); <u>see also</u> <u>Spencer v. EMC Mortg. Corp.</u>, 97 So. 3d 257, 260 (Fla. 3d DCA 2012) (holding that a foreclosure action filed more than five years after acceleration of the entire debt upon default was barred by the statute of limitations); <u>Greene v. Bursey</u>, 733 So. 2d 1111, 1115 (Fla. 4th DCA 1999) (holding that the statute of limitations began to run in that case from the date of maturity because the lender had not sought to accelerate and foreclose following an earlier default); <u>Monte v. Tipton</u>, 612 So. 2d 714, 716 (Fla. 2d DCA 1993) (stating the general principle that the statute of limitations on a mortgage foreclosure action does not begin to run until the last payment is due unless the mortgage contains an acceleration clause which the mortgagee has chosen to exercise); <u>accord</u> <u>Locke v. State Farm Fire & Cas. Co.</u>, 509 So. 2d 1375, 1377 (Fla. 1st DCA 1987); <u>see also</u> <u>Smith v. F.D.I.C.</u>, 61 F.3d 1552, 1561-62 (11th Cir. 1995), and <u>Harmony Homes, Inc. v. U.S. on behalf of Small Bus. Admin.</u>, 936 F. Supp. 907, 911 (M.D. Fla. 1996) (similarly relying on <u>Tipton</u>, <u>Locke</u>, and <u>Conner v. Coggins</u>, 349 So. 2d 780 (Fla. 1st DCA 1997), for the general proposition that the statute of limitations begins to run on a mortgage foreclosure action when the last payment is due except when the mortgage includes an acceleration clause). The decision in <u>Singleton</u>

*issue is determinative, and rejected that proposition.*

In coming to this conclusion, the Florida Supreme Court considered, and expressly rejected the view espoused in Stadler v. Cherry Hill Developers, Inc., 150 So. 2d 468 (Fla. 2d DCA 1963), that an acceleration of payments once put at issue is determinative. In Stadler, the Second District held that acceleration of payments in a foreclosure action on one defaulted installment payment put the entire loan balance at issue, thereby precluding a second foreclosure action on a subsequent default. Faced with a conflict between this determination in Stadler and the Fourth District's opinion in Singleton v. Greymar Associates, 840 So. 2d 356 (Fla. 4th DCA 2003), finding that a second foreclosure on a "new and different breach" would not be precluded, the Supreme Court chose to adopt the view employed by the Fourth District to find that a lender could maintain a separate action for foreclosure for a default which occurred after acceleration on an earlier default:

> [W]e can envision many instances in which the application of the Stadler decision would result in unjust enrichment or other inequitable results. If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure action on the

gives rise to no inconsistency in the law, and does nothing to change when the clock starts ticking for statute of limitations purposes. Rather, Singleton provides for new accelerations based on subsequent defaults—to which, of course, statutory limitations periods apply.

9

note—merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.

We must also remember that foreclosure is an equitable remedy and there may be some tension between a court's authority to adjudicate the equities and the legal doctrine of res judicata. The ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage. We can find no valid basis for barring mortgagees from challenging subsequent defaults on a mortgage and note solely because they did not prevail in a previous attempted foreclosure based upon a separate alleged default.

Singleton, 882 So. 2d at 1007-08 (citation omitted).

Here we follow that choice. And, as have numerous post-Singleton courts before us, we apply this determination, while made in the context of a res judicata defense, to a statute of limitations defense. See, e.g., Brown, 175 So. 3d at 834 (applying Singleton to a statute of limitations defense); Evergrene Partners, Inc., 143 So. 3d at 955, 956 (same); U.S. Bank Nat'l Ass'n v. Bartram, 140 So. 3d 1007, 1014 (Fla. 5th DCA 2014), review granted, 160 So. 3d 892 (Fla. Sept. 11, 2014) ("Based on Singleton, a default occurring after a failed foreclosure attempt creates a new cause of action for statute of limitations purposes, even where acceleration had been triggered and the first case was dismissed on its merits. Therefore, we conclude that a foreclosure action for default in payments occurring after the order of dismissal in the first foreclosure action is not barred by the statute of limitations found in section 95.11(2)(c), Florida Statutes, provided the subsequent foreclosure

10

action on the subsequent defaults is brought within the limitations period."); <u>Dorta</u>, 2014 WL 1152917, at *6 (rejecting a claim that the statute of limitations barred any further actions to foreclose after a previous action for foreclosure on an accelerated loan had been involuntarily dismissed, finding that <u>Singleton</u> "directly refutes this argument, holding that even where a mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee's foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure actions—and to seek acceleration of the entire debt—so long as they are based on separate defaults"); <u>see also</u> <u>Smathers v. Nationstar Mortg., LLC</u>, No.5:15-cv-415-Oc-30 PRL, 2014 WL 4639136, at *2 (M.D. Fla. Sept. 16, 2014) (applying <u>Singleton</u> in a statute of limitations case and confirming that an acceleration and foreclosure predicated upon a subsequent and different default would not be barred by the dismissal of an earlier action predicated on a separate and distinct default); <u>accord</u> <u>LNB-017-13, LLC v. HSBC Bank USA</u>, 96 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2015) (citing a litany of cases relying upon <u>Singleton</u> to conclude that "the current state of the law does not support [a claim that] . . . prior acceleration and expiration of the 5-year statute of limitations for foreclosure actions bars all other foreclosure actions based on non-payment").

We therefore conclude that dismissal of a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action on a later

default if the subsequent default occurred within five years of the subsequent action. See Solenenko v. Georgia Notes 18, LLC, 182 So. 3d 876, 877 (Fla. 4th DCA 2016) ("[T]he present action, which was brought in February 2014, was based upon a different event of default [than the 2008 foreclosure action]—namely the borrowers' failure to make the payment due on March 1, 2009. . . . Therefore, under this court's precedent, the action was timely brought within the five-year statute of limitations."); Hicks, 178 So. 3d at 959 (finding that "Bank is not precluded from filing a new foreclosure action based on different acts or dates of default not previously alleged, provided that the subsequent foreclosure action on the subsequent defaults is brought within the statute of limitations period found in section 95.11(2)(c), Florida Statutes"); Evergrene Partners, Inc., 143 So. 3d at 956 ("While any claims relating to individual payment defaults that are now more than five years old may be subject to the statute of limitations, each payment default that is less than five years old . . . created a basis for a subsequent foreclosure and/or acceleration action." (quoting Kaan v. Wells Fargo Bank, N.A., 981 F. Supp. 2d 1271, 1274 (S.D. Fla. 2013))); Bartram, 140 So. 3d at 1014 (concluding that "a foreclosure action for default in payments occurring after the order of dismissal in the first foreclosure action is not barred by the statute of limitations found in section 95.11(2)(c), Florida Statutes, provided the subsequent foreclosure action on the subsequent defaults is brought within the limitations period"); see

12

also <u>Kaan</u>, 981 F. Supp. 2d at 1274 (finding that, under <u>Singleton</u> and section 95.11(2)(c), Wells Fargo was allowed to bring a subsequent foreclosure action relating to subsequent payment defaults on the note and mortgage that were less than five years old).  It is the fact that the bank alleged the failure to pay the October 1, 2006 installment payment "*and all subsequent payments*" that makes the instant case fall within the rule as set out herein. (Emphasis added).

*c. Whether a dismissal is with or without prejudice is irrelevant to a lender's right to file subsequent foreclosure actions on subsequent defaults.*

Under <u>Singleton</u>, subsequent defaults allow for subsequent accelerations regardless of the nature of a prior dismissal.  A lender's right to file a subsequent action to foreclose on an accelerated note following a subsequent default does not turn on whether the first action to foreclose on an earlier default and acceleration was dismissed with or without prejudice.  As <u>Singleton</u> teaches, even a dismissal with prejudice which adjudicates the merits of a first filed foreclosure action only precludes the lender from recovering on the underlying defaulted installment and returns the lender and the borrower to the status quo which permits the lender to file subsequent foreclosure actions based on subsequent defaults.  <u>See</u> <u>Singleton</u>, 882 So. 2d at 1007 ("[I]f the plaintiff in a foreclosure action goes to trial and loses on the merits, we do not believe such plaintiff would be barred from filing a subsequent foreclosure action based upon a subsequent default.  The adjudication merely bars a second action relitigating the same alleged default.  A dismissal with

13

prejudice of the foreclosure action is tantamount to a judgment against the mortgagee. That judgment means that the mortgagee is not entitled to foreclose the mortgage. . . . Accordingly, we do not believe the dismissal of the foreclosure action in this case barred the subsequent action on the balance of the note." (quoting Capital Bank v. Needle, 596 So. 2d 1134, 1138 (Fla. 4th DCA 1992))).

A dismissal without prejudice which does not adjudicate the merits of a first filed foreclosure action, similarly can do no more than terminate a lender's ability to collect on the underlying defaulted installment, again leaving the lender free to accelerate and file a subsequent foreclosure action for subsequent defaults. See Brown, 175 So. 3d 834-35 (citations omitted) ("We find that appellant's assertion of the right to accelerate was not irrevocably 'exercised' within the meaning of cases defining accrual for foreclosure actions, when the right was merely asserted and then dismissed without prejudice. After the dismissal without prejudice, the parties returned to the status quo that existed prior to the filing of the dismissed complaint. As a matter of law, appellant's 2012 foreclosure action, based on breaches that occurred after the breach that triggered the first complaint, was not barred by the statute of limitations.").

Thus, as concluded in Bartram, and alluded to in Dorta, the "with" or "without prejudice" dismissal is a distinction without a difference. Bartram, 140 So. 3d at 1013 n.1 ("We acknowledge that the Bank suffered a dismissal with

prejudice of its earlier foreclosure action, unlike the dismissal in <u>Dorta</u>, but conclude that the distinction is not material for purposes of the issue at hand."); <u>Dorta</u>, 2014 WL 1152917 at *6 n.3 ("<u>Singleton</u> involved a dismissal with prejudice; whereas Citibank's foreclosure action was merely dismissed without prejudice. Dismissals without prejudice are not considered adjudications of the merits, and therefore there was no effective acceleration of the Note and the Mortgage."); <u>see also</u> <u>Espinoza v. Countrywide Home Loans Servicing, L.P.</u>, 2014 WL 3845795 at *4 (S.D. Fla. Aug. 5, 2014) ("Pursuant to <u>Singleton</u>, when 'a mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee's foreclosure action is unsuccessful <u>for</u> <u>whatever</u> <u>reason</u>, the mortgagee still has the right to file later foreclosure actions . . . so long as they are based on separate defaults.'" (Emphasis added) (quoting <u>Dorta</u>, 2014 WL 1152917 at *6)). As observed in <u>In re Anthony</u>, 534 B.R. 834, 838-39 (Bkrtcy. M.D. Fla. 2015), "[t]he better view is that dismissals with and without prejudice operate in the same manner with respect to the statute of limitations in mortgage foreclosures."

Simply stated, the holding in <u>Singleton</u> cannot be distinguished away on a *with prejudice/without prejudice* distinction. Whether voluntarily dismissed or dismissed with or without prejudice the result is the same: upon dismissal, acceleration of a note and mortgage is abandoned with the parties returned to the

15

status quo that existed prior to the filing of the dismissed action, leaving the lender free to accelerate and foreclose on subsequent defaults.

Finally, separate and apart from the analysis established by Singleton, case law confirms "[w]hen an action is dismissed without a final adjudication on the merits, the parties are left as if the suit had never been filed. Epstein v. Ferst, 35 Fla. 498, 509, 17 So. 414, 415 (1895); 1 Fla. Jur. 2d Actions § 220 (2003)." JB Int'l, Inc. v. Mega Flight, Inc., 840 So. 2d 1147, 1150 (Fla. 5th DCA 2003). Thus, when the first foreclosure in this case was dismissed without prejudice, under established Florida case law, the parties were returned to their prior positions and nothing barred a new and timely action for acceleration and foreclosure. Epstein, 17 So. at 415 ("A dismissal 'without prejudice' leaves the parties as if no action had been instituted.").

**2. The lender in this case was under no obligation, contractually or legally, to "decelerate" this loan following dismissal.**

*a. The mortgage itself confirms that the installment nature of the loan continues even after acceleration.*

There was no obligation on the bank to take any action to "decelerate" this loan following dismissal of the first foreclosure action because the mortgage itself confirms that the installment nature of the loan continues even after acceleration and the filing of a foreclosure action:

> **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, *Borrower shall have the*

16

> *right to have enforcement of this Security Instrument discontinued at any time prior to* the earliest of ... (c) *entry of a judgment enforcing this Security Instrument.* Those conditions are that Borrower ... (a) *pays Lender all sums which then would be due* under this Security Instrument and the Note *as if no acceleration had occurred* . . . . *Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.*

(Emphasis added).

This provision, while addressing only a borrower's right to cure, confirms that after acceleration, the borrower is not obligated to pay the entire accelerated balance due to cure but, until a final judgment is entered, need only bring the loan current to avoid foreclosure. Stated another way, despite acceleration of the balance due and the filing of an action to foreclose, the installment nature of a loan secured by such a mortgage continues until a final judgment of foreclosure is entered and no action is necessary to reinstate it via a notice of "deceleration" or otherwise. As our sister court has confirmed, "[a]fter the dismissal . . . the parties returned to the status quo that existed prior to the filing of the dismissed complaint." Brown, 175 So. 3d at 835. No further acts were necessary on the bank's part to "decelerate" this loan. See Matos v. Bank of New York, 2014 WL 3734578 at *1 (S.D. Fla. July 28, 2014) ("The statute of limitations has not run on this foreclosure action due to the dismissal of the prior foreclosure action, which decelerated the notice of acceleration.").

17

Even if such an affirmative act were required to decelerate this loan and to reinstate its installment nature, the failure to do so following dismissal of the first action would not preclude the instant action. This is because the mortgage at issue here clearly states that the bank's failure to act will not work as a waiver of its rights under the note and mortgage:

> UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
> . . .
>
> **12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by the Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization or the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. *Any forbearance by Lender in exercising any right or remedy* including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, *shall not be a waiver of or preclude the exercise of any right or remedy*.

(Emphasis added).

Likewise the note provides for no waiver of the noteholder's right to payment:

> **6. BORROWER'S FAILURE TO PAY AS REQUIRED**
>
> . . . .

18

**(D) No Waiver By Note Holder**

> Even, if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Because the installment nature of the loan at issue did not terminate following acceleration and foreclosure, and because dismissal of the foreclosure action returned the parties to the status quo existing before acceleration, the bank was under no obligation to take any affirmative action to reinstate the installment nature of the loan or to "decelerate."

*b. This reading of the mortgage contract is in accord with Florida and national mortgage industry practices and best serves the interests of both mortgagees and mortgagors.*

This conclusion is wholly consistent with both national and local industry custom and practice. As amici Fannie Mae and Freddie Mac[4] advise in an amicus brief provided on request, the mortgage at issue here is one of their "uniform mortgage instrument[s]" drafted "to ensure uniformity in the residential housing finance market" nationwide. According to them, paragraph 19, the reinstatement provision, was inserted into their standard mortgage forms to benefit defaulting borrowers by allowing them to avoid foreclosure by catching up on missed installment payments <u>rather than having to pay</u> the entire balance of a loan following acceleration. This,

[4] The purpose of these entities, we are advised, is to assure greater access to mortgage credit while promoting liquidity, stability and affordability in the residential real estate market.

according to Fannie Mae and Freddie Mac, effectively preserves the installment nature of a loan even after acceleration making "deceleration" unnecessary following dismissal of a foreclosure action:

> Because a borrower defaulting on his or her installment obligations has a continuing right to reinstate the Mortgage until entry of judgment (at which time the Mortgage ceases to exist), the installment nature of the contract exists for as long as the Mortgage does. Therefore, no affirmative act is necessary to reinstate the Mortgage's installment obligations after dismissal. . . .[5]

Adding support to our conclusion, both The Business Law Section[6] of The Florida Bar and The Real Property Probate & Trust Law Section[7] of The Florida Bar confirm that the custom and practice in Florida is to treat a dismissal of a

---

[5] As these amici note, "after dismissal, the lender no longer has any claim to the fully-accelerated amount, only the past-due payments." Were this not true, "a lender that receive[d] a payment from a reinstating borrower for less than the fully-accelerated amount after accelerating the loan could simply return that payment and proceed with its foreclosure. But the Reinstatement Provision [paragraph 19] prohibits that." Moreover, we are advised, if lenders were obligated to take some affirmative act to "decelerate" following dismissal, a lender could unilaterally nullify the reinstatement provision, refuse to decelerate, and obligate the borrower to pay the entire accelerated amount.

[6] The Business Law Section of The Florida Bar is comprised of almost 6,000 Bar members who routinely represent both lenders and borrowers.

[7] The Real Property Probate & Trust Law Section of The Florida Bar is comprised of over 10,000 Bar members who practice in the areas of real estate, guardianship, trust and estate law, and who are dedicated to serving all Florida lawyers and the public in these fields of practice. The Section produces educational materials and seminars, assists the public *pro bono*, drafts legislation, drafts rules of procedure, and occasionally serves as a friend of the court to assist on issues related to their fields of practice.

foreclosure action as "decelerating" an acceleration made in a foreclosure action. See Cooke v. Commercial Bank of Miami, 119 So. 2d 732, 735 (Fla. 3d DCA 1960) (concluding "customs and usages of the banking business may have a binding force as between banks, and between a bank and the person with whom it deals in the absence of an express agreement to the contrary"); see also Sabatino v. Curtiss Nat'l Bank of Miami Springs, 446 F.2d 1046, 1053 (5th Cir. 1971) ("Absent instructions or an express agreement to the contrary, general customs and usage of the banking business may have a binding effect between banks, and between a bank and the person with whom it deals.").

In response to a number of inquiries posed by this court, The Real Property Probate & Trust Law Section reviewed the underlying mortgage and facts herein and relying on Florida statutes and case law provided the following responses which confirm our conclusion that the installment nature of the a loan continues following acceleration and that the practice in this State is that no more than dismissal of a foreclosure action is necessary to "decelerate" an accelerated loan:

1. Where a foreclosure action has been dismissed with the note and mortgage still in default:

a. Does the dismissal of the action, by itself, revoke the acceleration of the debt balance thereby reinstating the installment terms?

*The Section responds:*

*The optional acceleration the lender exercised as part of the foreclosure process could not be effectuated until entry of the*

21

*foreclosure judgment. Until then, that acceleration was subject to the foreclosure proceeding being dismissed for various reasons, including the borrower's contractual right to reinstate and discontinue the foreclosure action by curing the past installment payment default. Absent a contrary provision in the mortgage contract, Florida law and equitable principles generally dictate the conclusion that no further affirmative act of deceleration is necessary. The dismissal itself should serve to revoke the acceleration made as part of the now dismissed foreclosure process and the parties should be deemed to have returned to their pre-filing status quo.*

*b.* Absent additional action by the mortgagee can a subsequent claim of
acceleration for a new and different time period be made?

*The Section responds:*

*Yes. The installment nature of the mortgage loan, the terms of this form of mortgage, Florida case law and equitable principles dictate allowing a subsequent acceleration and foreclosure action for any new and different default.*

*c.* Does it matter if the prior foreclosure action was voluntarily or involuntarily dismissed, or whether the dismissal was with our without prejudice?

*The Section responds:*

*The nature of the dismissal in a prior foreclosure action should not matter in a subsequent foreclosure based on a default occurring after the default that precipitated the prior foreclosure action. However, the*
*nature of the dismissal may matter if the statute of limitations or doctrine of res judicata is applicable to the default at issue in the prior*
*foreclosure action.*

*d.* What is the customary practice?

*e. The Section responds:*

22

*The RPPTL Section defers to the response in the Business Law Section*
*of the Florida Bar's amicus brief. That response is consistent with the RPPTL Section's understanding of the customary practice. [The BLS responded: the customary practice appears to be acceleration of "optional acceleration" loans through the filing of suit and not through acceleration notices. Accordingly, the customary practice amongst the BLS's members appears to be based on Singleton and that filing of a new suit is permitted on a mortgage that contains an optional acceleration clause, whether the prior suit was terminated by voluntary dismissal or otherwise.]*

*2.* If an affirmative act is necessary by the mortgagee to accelerate a mortgage, is an affirmative act necessary to decelerate?

*The Section responds:*

*Unless the mortgage contract or the mortgagee's acceleration otherwise dictates, the dismissal of the foreclosure action should be deemed a deceleration returning the parties to the status quo.*

*3.* In light of Singleton v. Greymar Assocs., 882 So. 2d 1004 (Fla. 2004), is deceleration an issue or is deceleration inapplicable if a different and subsequent default is alleged?

*The Section responds:*

*Under the terms of the mortgage in this case, Singleton dictates the conclusion that deceleration after the dismissal of a prior foreclosure action is not an issue (or is inapplicable) in a subsequent foreclosure based on a different and subsequent alleged default.*

The sum of these responses is that the custom and practice nationwide and in Florida is consistent with Singleton and that a loan accelerated for one default is "decelerated" upon dismissal (whether with or without prejudice).

23

In fact, after the dismissal in this case, the bank treated the loan as decelerated. After the dismissal, the bank sent Beauvais a letter demanding—not the full amount of the accelerated loan—but only the amount due from the date of default to the date of the letter. In the letter, the bank also noted that the next installment payment was still due on the next payment date, which it provided. The bank's demand for less than the full amount of the accelerated loan, and the bank's notice that the next individual installment payment remained due, is consistent only with the bank's treatment of the loan as decelerated. Thus, the Florida Supreme Court's ruling in <u>Singleton</u> and our decision here, track the actual and best practices of the industry regarding deceleration in these circumstances. There is no reason for courts to structure artificial rules regarding acceleration and deceleration at odds with how these matters are actually treated by borrowers and lenders in the marketplace.

### 3. The decisions of other states in no way militate against our analysis herein.

There is nothing new or novel in this mode of proceeding. And the view taken in <u>Singleton</u> does not make Florida an outlier in the law. Amici, National Association of Consumer Advocates, The National Consumer Law Center, and the Jerome N. Frank Legal Services Organization at the Yale Law School submitted a joint brief on rehearing en banc, which set forth and examined the relatively few opinions from states that have considered the import of a dismissal of a foreclosure

action on an accelerated note and/or the circumstances whereby the lender may reinstate a mortgage after acceleration. Of the jurisdictions that have considered the issue, few appear to have addressed whether some affirmative act is necessary to "decelerate" an accelerated loan following dismissal of a foreclosure action.

As for the approximately fifteen states[8] where, like Florida, home loans are secured by mortgages which require judicial intervention to foreclose, the cases cited to us by these amici confirm that only one appears to have actually determined that some affirmative act following dismissal must be taken to "decelerate" an accelerated loan. See, e.g., Fed. Nat'l Mortg. Ass'n v. Mebane, 618 N.Y.S.2d 88, 89 (N.Y. App. Div. 1994) (confirming that the intermediate appellate courts of New York have taken the position that dismissal of a foreclosure action does not work a "deceleration" and a lender must take an affirmative step to revoke an election to accelerate). By contrast, at least one Indiana court in a "nearly identical situation" to Singleton, has cited with approval

---

[8] Connecticut: Conn. Gen. Stat. §§ 49-1 to 49-31v; Delaware: Del. Code Ann. tit. 10 §§ 5061 through 5067; Illinois: 735 Ill. Comp. Stat §§ 5/15-1501 to 5/15-1605; Indiana: Ind. Code §§ 32-30-10-1 to 32-30-10-14; Kansas: Kan. Stat. Ann. § 60-2410; Kentucky: Ky. Rev. Stat. Ann. § 426.005; Louisiana: La. Code Civ. Proc. Ann. arts. 3721 to 3723; Maine: Me. Rev. Stat. Ann. tit. 14, §§ 6321 to 6326; New Jersey: N.J. Stat. Ann. §§ 2A:50-1 to 2A:50-73; New York: N.Y. Real Prop. Acts. Law §§ 1301 to 1391; North Dakota: N.D. Cent. Code §§ 32-19-01 to 32-19-41; Ohio: Ohio Rev. Code Ann. § 2323.07; Pennsylvania: 35 Pa. Stat. Ann. §§ 1680.402c to 1680.409c; South Carolina: S.C. Code Ann. §§ 29-3-610 to 29-3-790.

and relied upon <u>Singleton</u>. <u>See</u> <u>Afolabi v. Atlantic Mort. & Inv. Corp</u>., 849 N.E. 2d 1170, 1174-75 (Ind. Ct. App. 2006).

As for the remainder of the cases cited to us by amici, the issue remains largely undecided. <u>See</u> <u>Johnson v. Samson Constr. Corp</u>, 704 A. 2d 866, 869 (Me. 1997) (mentioning the issue in dicta in a case that determined, contrary to the position taken in <u>Singleton</u>, that a dismissal with prejudice of a foreclosure action for failure to file a report by counsel constituted an adjudication on the merits which precluded a subsequent foreclosure action); <u>U.S. Bank Nat'l Ass'n v. Gullotta</u>, 899 N.E. 2d 987, 992-93 (Ohio 2008) (similarly where the Supreme Court of Ohio mentioned the issue in dicta in a decision apparently limited to its facts and which, again contrary to <u>Singleton</u>, confirmed that there each missed installment payment does not yield a new claim); <u>Hamlin v. Peckler</u>, NO. 2005-SC-000166-MR, 2005 WL 3500784, at *2 (Ky. Dec. 22, 2005) (addressing the issue once, in an unpublished, never-again cited opinion that ultimately did not reach the merits of the issue for procedural reasons); <u>Harrison v. Smith</u>, 814 So. 2d 42, 45-46 (La. Ct. App. 2002) (addressing the issue in the context of a note with no reinstatement provision and later cited only twice for a different proposition); <u>Fid. Bank v. Krenisky</u>, 807 A.2d 968, 975 (Conn. App. Ct. 2002) (addressing the issue in the context of an acceleration via a pre-suit letter and finding that "[b]ecause the mortgage documents required no additional notice of default prior to the plaintiff's

26

commencement of its second foreclosure action, that component of the defendants'

first special defense is legally insufficient").

The remaining five cases cited to us by amici come from deed-of-trust states[9]

which, unlike Florida, generally require no judicial intervention to foreclose.  See

55 Am.Jur.2d Mortgages §553 (2015) ("The power of sale in a deed of trust is a

contractual arrangement in a mortgage or a deed of trust which confers upon the

trustee or mortgagee the 'power' to sell the real property mortgaged without any

order of court in the event of a default.") (Citation omitted).  For the most part,

these decisions do not demonstrate that Florida is an outlier on this issue because

they: (1) address the issue in unpublished opinions with no precedential value, see

Kirsch v. Cranberry Fin., LLC, 178 Wash. App. 1031 (Wash Ct. App. 2013),

Wood v. Fitz-Simmons, No. 2 CA-VC 2008-0041, 2009 WL 580784 (Ariz. Ct.

App., Mar. 6, 2009), and Cadle Co. II, Inc. v. Fountain, 281 P. 3d 1158 (Nev.

2009); (2) are rarely if ever cited as authority, see Kirsch, 178 Wash. App. 1031

(cited once); Wood, 2009 WL 580784 (no citations), Cadle Co. II, Inc., 281 P. 3d

1158 (cited twice, including by the panel in this case); (3) are governed by a statute

which expressly provides, unlike in Florida, that the statute of limitations runs

from the accelerated due date of the loan, see Kirsch, 178 Wash. App. 1031, at *4-

5; or (4) do not even address the issue. See Murphy v. HSBC Bank USA, 95 F.

---

[9] We note that there are a handful of states which allow both judicial and non-judicial foreclosure.

Supp. 3d 1025 (S.D. Tex. 2015) (involving an independent action challenging the mortgagee's standing to foreclose a deed-of-trust in a non-judicial proceeding); Khan v. GBAK Props., Inc., 371 S.W. 3d 347, 352 (Tex. Civ. App. 2012) (addressing whether the note holder had abandoned its prior acceleration—which had been accomplished through an acceleration letter—by continuing to accept payments on the note at a later date); Bankers Trust Co. of California, N.S. v. Baca, 151 P. 3d 88, 90-91 (N.M. Ct. App. 2006) (which stands for the rather unremarkable proposition that while res judicata did not prevent the filing of the second foreclosure action, the second action was nevertheless subject to the applicable statute of limitations that ran from the due date of the installment payment the mortgagor failed to make, as is the case with any installment contract).[10]

In short, by our estimation there is hardly a consensus in this area of the law outside of Florida and by no stretch of the imagination can Florida be labeled as an "outlier" on this point. Thus, while we do not question that several courts across the country have adopted reasoning different from that accepted in Florida, the point is *our* Supreme Court has rejected that different analysis. See Singleton, 882

[10] Because this case did not involve an acceleration by letter, this opinion in no way addresses what, if any, notice of deceleration would be required in such an instance. In that same vein, that non-involvement of judicial process may explain why deed-of-trust states may reach a different conclusion as to the requirement of notice of deceleration, as without court participation, the mortgagor may rightly need some notice that acceleration is no longer at issue.

So. 2d 1006 (disapproving Stadler's conclusion at 150 So. 2d at 472, "that an election to accelerate puts all future installment payments in issue and forecloses successive suits"). Instead, citing both legal and equitable reasons, Singleton chose to conclude a subsequent default created a new right to accelerate,[11] making the dismissal of the prior action for acceleration—with or without prejudice—non-determinative of a different and subsequent claim.

*4. Concerns raised in the dissent.*

In summary, as set out above, we reject the dissent's concerns in the following manner:

1) Our analysis in no way perpetuates an upheaval to the contract at issue. As the dissent admits, the instant contract does not address the result of a dismissal or the rights or obligations of the parties thereafter. In fact, the dissent's conclusion that the lender waived its right to accelerate when it failed to decelerate the loan following dismissal is in express contradiction to paragraph 12 of the mortgage and paragraph 6 of the note, both of which specifically provide that any forbearance by the lender in exercising any right or remedy shall not be a waiver or preclude the exercise of that right or remedy.

2) Our analysis in no way perpetuates an upheaval to the statute of limitations. We do not suggest that the statute of limitations becomes a nullity. Rather, under Singleton, dismissal of a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action accelerating payment on a later default if the

---

[11] The Court having spoken, it is our obligation to follow that instruction. See Hoffman v. Jones, 280 So. 2d 431, 434 (Fla. 1973) ("To allow a District Court of Appeal to overrule controlling precedent of this Court would be to create chaos and uncertainty in the judicial forum, particularly at the trial level.").

29

subsequent default occurred within five years of the subsequent action and acceleration.

3) Our analysis in no way perpetuates an upheaval to long-standing law on the effect of a dismissal. Rather, as previously stated, the law has been and continues to be that an action dismissed without a final adjudication on the merits leaves the parties as though the suit had never been filed, which is no more than exactly the conclusion we reach herein.

4) Our conclusion in no way results in a cataclysmic change in Florida law or the way in which lenders proceed against defaulting borrowers. Rather, as Fannie Mae, Freddie Mac, and the Florida Bar confirm, our analysis is in keeping with the understanding of members of the mortgage industry and those who represent both borrowers and lenders.

5) Our conclusion is not the result of any perceived "moral imperative" or quest for equity run amuck. Rather, it is the result of what the Supreme Court has said, what the contract provides, and what a dismissal does.

## 5. Conclusion.

In sum, after the 2010 dismissal without prejudice of the predecessor mortgagee's foreclosure action, the parties returned to the status quo that existed prior to the filing of the dismissed complaint. As a matter of law, the bank's 2012 foreclosure action, based on breaches that occurred after the breach that triggered the first complaint, was not barred by the statute of limitations. So says Singleton, as well as the terms of the parties' mortgage and note. This resolution is in keeping with the long held practices of the Florida mortgage industry and moreover, best protects the interests of both mortgagees, who are not left with nullified mortgages, but also mortgagors, who by the terms of their mortgages, are

30

permitted any time before judgment, to become current on their mortgage obligation.

Additionally, as should be apparent from the analysis outlined above, we likewise reverse that portion of the trial court's order which declared that the mortgage was null and void, canceled same, and quieted title to the property in favor of the Association. The Legislature, by its express language, provided that the mortgage lien under section 95.281(1)(a) would terminate five years after a maturity date that can be determined from the face of a recorded document. The face of the recorded mortgage in the instant case reveals a maturity date of March 1, 2036. Therefore, and pursuant to section 95.281(1)(a), the mortgage lien remains valid until March 1, 2041, five years from the date of maturity as reflected in the recorded mortgage securing the obligation.

Accordingly, we reverse the order under review and remand this cause to the trial court for further proceedings consistent with this opinion.

SUAREZ, C.J., and ROTHENBERG, LAGOA, FERNANDEZ and LOGUE, JJ., concur.

31

Deutsche Bank Trust Co. Americas, etc. v. Harry Beauvais,
and Aqua Master Association, Inc., etc.
3D14-575

SCALES, J. (dissenting)

I respectfully dissent. In my view, contrary to the majority's conclusion, Singleton v. Greymar Associates[12] does not fundamentally alter, *sub silentio*, decades of Florida statute of limitations jurisprudence.

**I.  Overview**

The statute of limitations for a foreclosure action is five years from when the last element constituting the cause of action occurs. § 95.11(2)(c), Fla. Stat. (2013).

When, as here, a mortgage secures a promissory note containing an optional acceleration clause, the statute of limitations begins to run from the date the lender exercises its acceleration right. Greene v. Bursey, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999); Monte v. Tipton, 612 So. 2d 714, 716 (Fla. 2d DCA 1993); see also Smith v. Fed. Deposit Ins. Corp., 61 F. 3d 1552, 1561 (11th Cir. 1995); Erwin v. Crandall, 175 So. 862, 863 (Fla. 1937); Spencer v. EMC Mortg., 97 So. 3d 257, 260 (Fla. 3d DCA 2012).

In this case,  after the borrower Harry Beauvais defaulted by failing to make the installment payment due on September 1, 2006, the lender (plaintiff Deutsche Bank's predecessor-in-interest) exercised its option to accelerate all amounts due

---

[12] 882 So. 2d 1004 (Fla. 2004)

on January 22, 2007. Deutsche Bank's instant foreclosure lawsuit was filed on December 18, 2012, well beyond the five-year statute of limitations.

Relying on almost eighty years of well-established Florida jurisprudence, the trial court granted the defendant's motion for summary judgment on this issue, and a panel of this Court unanimously affirmed the trial court's determination in that regard. Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575 (Fla. 3d DCA Dec. 17, 2014).

Relying on a sweepingly broad interpretation of Singleton v. Greymar Associates – a Florida Supreme Court case in which the term "statute of limitations" is not even mentioned – the *en banc* majority opinion reverses the summary judgment and, in the process: (i) creates the legal fiction that a lender's acceleration does not affect the installment nature of the note; (ii) rewrites the acceleration and reinstatement provisions of the parties' note and mortgage; and (iii) effectively rewrites the statute of limitations for mortgage foreclosure actions in Florida.

Specifically, the majority opinion holds **both** (a) that a borrower's obligation to make, and a lender's obligation to accept, monthly installment payments on an installment note continue after the lender's acceleration; **and** (b) that irrespective of the nature of the dismissal, as a matter of law, **any** dismissal of a foreclosure

lawsuit nullifies the lender's prior acceleration and reinstates the installment nature of the previously accelerated note, as if the lender had never exercised acceleration.

In my view, not only are these two holdings inconsistent with each other, but, when taken together, these holdings effectively rewrite Florida statute of limitations jurisprudence in foreclosure cases. Singleton can, and should, be read in harmony with – rather than to upend – significant Florida precedent regarding installment note acceleration, mortgage foreclosure, and limitations of actions.

## II. Facts

### A. *The Promissory Note*

On February 10, 2006, Beauvais borrowed $1,440,000 from plaintiff's predecessor-in-interest, American Broker's Conduit. Beauvais's loan was memorialized with a promissory note, requiring Beauvais to repay the loan by making monthly installment payments over thirty years.

The installment nature of the note (which obligates the borrower to repay the loan in prescribed monthly installments, and which obligates the lender to accept such payments) is plainly, precisely, and expressly defined in paragraphs 3(A) and (B) of the note:

> I will make a payment every month . . . . I will make my monthly payment on the 1st day of each month beginning on April 1, 2006. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and

interest it will be applied to interest before Principal . . . . I will make my monthly payments at [address of lender] . . . . My monthly payment will be in the amount of U.S. $10,050.00 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $12,382.96. The Note Holder will notify me prior to the date of change in monthly payment.

The note's maturity date is expressly defined as March 1, 2036. Specifically, the note reads as follows: "If, on March 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'Maturity Date.'"

In its paragraph 6(C), the note contains the following default/acceleration provision that, upon the borrower's default, gives the lender an option to accelerate all amounts due under the note, thereby advancing the note's maturity date:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Recognizing that the note is secured by a uniform mortgage (that is, a security instrument), paragraph 10 of the note contains the following language related to the default/acceleration provisions in the accompanying mortgage:

> That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

. . . .

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given . . . within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

B. *The Mortgage*

Beauvais's note was secured by a mortgage, encumbering a unit in the Chatham at Aqua condominiums in Miami Beach.

Consistent with the above-cited default language in the note, paragraph 22 of Beauvais's mortgage contains the following acceleration/remedy provision:

**Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.

In paragraph 19 of the Beauvais mortgage, the parties painstakingly and precisely detail the conditions precedent in order for the installment nature of the note to be reinstated after the lender has exercised its option to accelerate. Paragraph 19 reads as follows:

> **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured thereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

In sum, the parties' note and mortgage provide a contractual mechanism both: (i) for Beauvais to prevent the lender from exercising its right to acceleration after a default and the lender's notice thereof; and (ii) for Beauvais to reinstate the installment nature of the note after the lender has exercised its right to acceleration.

Neither the note nor the mortgage contain any provision reinstating the installment nature of the note if, after acceleration, a lender foreclosure action is dismissed.

## C. *The First Lawsuit and its Disposition*

After Beauvais failed to make the September 2006 installment payment due on his promissory note, American Home Mortgage, Inc. ("AHMS"), the successor to Beauvais's initial lender, exercised its contractual right to accelerate the total amount due on the note.[13]

In its January 22, 2007 complaint, AHMS alleged that Beauvais then owed AHMS the sum of $1,439,976.80 in principal, plus interest accrued from August 1,

---

[13] The lender's acceleration is memorialized in its January 22, 2007 foreclosure lawsuit. Paragraph 4 of AHMS's complaint reads as follows: "Defendant, HARRY BEAUVAIS, failed to pay the payment due on the Note on September 1, 2006, and Plaintiff elected to accelerate payment of the balance." Similarly, paragraph 14 of the complaint reads as follows: "Plaintiff declares the full amount payable under the Note and Mortgage to be due."

The record is unclear as to whether AHMS exercised its right to accelerate prior to the filing of its complaint. Even if AHMS had accelerated Beauvais's note earlier, such a fact would have no relevance as to whether the statute of limitations had run by the time Deutsche Bank filed the instant action, more than five years after the first action was filed.

2006. The complaint identifies the default date as September 1, 2006, and names as defendants both Beauvais and the Chatham at Aqua Condominium Association.[14]

Almost four years after AHMS's foreclosure lawsuit was filed, the trial court set the matter for a December 6, 2010 case management conference. The trial court's order setting the case management conference required the attendance of all parties at the conference. AHMS failed to appear at the conference. As a result, the trial court dismissed the case without prejudice. The adjudicative portion of the trial court's form order, dated December 6, 2010, reads, in its entirety, as follows: "The Plaintiff failed to appear without explanation. Therefore, this case is dismissed without prejudice."

Nothing in the trial court's order reinstates the installment nature of the loan or adjudicates AHMS's acceleration as ineffective in any regard.

Nothing in the record indicates that, upon entry of the trial court's December 6, 2010 dismissal order, either AHMS or Beauvais treated this order as: (i) reinstating the installment nature of the loan, (ii) nullifying AHMS's prior acceleration, or (iii) readjusting the note's maturity date from January 22, 2007 (the advanced maturity date after acceleration), to March 1, 2036 (the pre-

---

[14] Subsequent to the recordation of the mortgage, Beauvais's master condominium association placed an inferior lien on Beauvais's condominium unit for unpaid condominium assessments. AHMS sought to foreclose this inferior lien.

acceleration maturity date expressed in the note). Moreover, it is undisputed that Beauvais never exercised, nor sought to exercise, the "reinstatement after acceleration" provision of paragraph 19 of the mortgage.

### D. *The Instant Lawsuit and its Disposition*

On November 2, 2012, Homeward Residential, Inc., a loan servicer working on behalf of AHMS's successor, Deutsche Bank, sent Beauvais a pre-acceleration default notice.

This notice stated that Beauvais defaulted on the note by failing to make the installment payment due on October 1, 2006 (as opposed to the September 1, 2006 default date alleged in AHMS's acceleration), and that Beauvais owed Deutsche Bank the sum of $796,161.19, which the letter describes as "the sum of payments that have come due on or after the date of default 10/01/2006, any late charges, periodic adjustments to the payment amount (if applicable) and expenses of collection."

This notice also purports to give Beauvais through December 7, 2012 (thirty-five days from the date of the notice), to make the $796,161.19 payment in order to avoid a **second** acceleration and foreclosure lawsuit.

Nothing in this November 2, 2012 letter references AHMS's January 22, 2007 acceleration, any nullification of that acceleration, any reinstatement of the installment nature of the loan, or why Homeward Residential waited more than six years after the alleged October 1, 2006 default to send this notice.

On December 18, 2012, Deutsche Bank filed the instant verified complaint for foreclosure. In its complaint, Deutsche Bank purports to exercise its option to accelerate **a second time**, alleging an October 1, 2006 default date (as opposed to the September 1, 2006 default date identified in the first complaint). The verified complaint alleges an accelerated amount then owed to plaintiff of $1,439,976.80 (the exact same accelerated amount alleged in AHMS's initial foreclosure complaint, filed almost six years earlier).

Deutsche Bank's complaint contains no allegations suggesting that AHMS's initial acceleration was, in any way, ineffective. In fact, Deutsche Bank's complaint contains no allegations whatsoever regarding the January 2007 acceleration, any reinstatement of the installment nature of note occurring after that January 2007 acceleration, or why the complaint is being filed more than six years beyond the date of the alleged October 1, 2006 default.

By the time Deutsche Bank filed its December 18, 2012 complaint, Beauvais's master condominium association, Aqua Master Association, Inc. ("Aqua"), had already foreclosed its previously recorded assessment lien, and had become the title owner of the condominium unit. Aqua filed an answer to Deutsche Bank's complaint, asserting, as its sole affirmative defense, that the five-year statute of limitations, prescribed in section 95.11(2)(c) of the Florida Statutes, barred Deutsche Bank's cause of action.

Specifically, Aqua asserted that more than five years had elapsed between AHMS's 2007 acceleration of the amounts due under Beauvais's note and the filing of Deutsche Bank's December 2012 purported re-acceleration and foreclosure lawsuit.

In December of 2013, Aqua filed a motion for summary judgment, seeking a declaration that the note and mortgage were unenforceable due to the expiration of the statute of limitations. The trial court granted Aqua's summary judgment motion and entered final summary judgment for Aqua. This appeal followed.

This Court's panel opinion affirmed that portion of the trial court's summary judgment declaring that the expiration of the statute of limitations barred the plaintiff's foreclosure action, but reversed the trial court's declaration cancelling the mortgage. Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575 (Fla. 3d DCA Dec. 17, 2014). This Court granted *en banc* review, and the *en banc* majority opinion reverses the trial court's summary judgment. My dissent is explained below.

### III. Analysis

*A. Synopsis of Majority Opinion's Holding and My Dissent*

The majority opinion concludes that the five-year statute of limitations for foreclosure actions does not bar Deutsche Bank's December 20, 2012 lawsuit, "[b]ecause the installment nature of the loan at issue did not terminate following

42

acceleration and foreclosure and because dismissal of the foreclosure action returned the parties to the status quo existing before acceleration . . . .” See majority opinion at 19.

The majority opines that Singleton – which is a *res judicata* case and not a statute of limitations case – stands for the proposition that a lender’s exercising its option to accelerate does not affect the installment nature of a loan. In other words, in the majority’s view, Singleton necessarily holds that, subsequent to a lender’s acceleration, a borrower’s monthly installment payments continue to become due monthly, and a borrower’s failure to make those post-acceleration monthly payments constitute subsequent defaults. See majority opinion at 6, 12.

In a separate part of its opinion, the majority also (and, in my view, inconsistently) holds that, under Singleton, **any** dismissal of a prior foreclosure action automatically, and as a matter of law, places the parties into their pre-acceleration positions (i.e., the status quo) and allows the lender to treat the note as if the lender had never accelerated the note. See majority opinion at 13, 19, 30.[15]

In my view, despite the majority’s abundant number of citations to Singleton v. Greymar Associates, the majority’s conclusions simply are not supported, much less required, by Singleton. The majority’s conclusions are contrary to the express

---

[15] The majority’s two principal conclusions are not only erroneous, they are also irreconcilable with each other. If acceleration does not terminate the installment nature of the loan, then dismissal is irrelevant because acceleration has not altered the parties’ status quo in the first place.

terms of the parties' note and mortgage, as well as the considerable body of Florida law that has governed this State's mortgage transactions for decades.

Specifically, the majority's principal conclusions are untenable because they: (i) contradict the express language of Singleton that only an adjudication that denies acceleration and foreclosure reinstates the loan (Singleton, 882 So. 2d at 1007); (ii) effectively rewrite the parties' contract documents, both by adding a new reinstatement provision and by redefining acceleration; (iii) rewrite Florida dismissal law, visiting upon a form dismissal order unprecedented adjudicatory effect; (iv) effectively rewrite the statute of limitations defense in foreclosure cases; and (v) conflate Florida's statute of limitations with Florida's statute of repose in foreclosure cases.

B. *Singleton v. Greymar Associates*

*(i) Summary of Singleton*

In Singleton, the lender brought its first foreclosure action against the borrower based on a September 1, 1999 default. Singleton, 882 So. 2d at 1005. The trial court dismissed that first foreclosure action, with prejudice, as a sanction for the failure of the lender to appear at a case management conference. Id.

The lender brought its second foreclosure action based on an April 1, 2000 default. The trial court rejected the borrower's *res judicata* defense (that the

44

adjudication of the first foreclosure lawsuit forever barred the lender from suing on the note and mortgage), and entered summary judgment for the lender. Id.

The borrower appealed, arguing that the trial court's dismissal, with prejudice, of the lender's first case constituted *res judicata* of any subsequent foreclosure case, and forever precluded the lender from suing the borrower on the note and mortgage.

On appeal, the Fourth District Court of Appeal affirmed the trial court's summary judgment, Singleton v. Greymar Assocs., 840 So. 2d 356 (Fla. 4th DCA 2003), and the Florida Supreme Court upheld the district court's affirmance.[16] [17] The Supreme Court determined that *res judicata* does not necessarily bar a subsequent action based on a subsequent default. Singleton, 882 So. 2d at 1005.

The Supreme Court in Singleton held that the trial court's adjudication of the first action "merely bars a second action relitigating the same alleged default." Id. at 1007. The Court held: "While it is true that a foreclosure action and an

---

[16] The statute of limitations defense was not discussed in either the district court's or the Supreme Court's Singleton opinion. In fact, based on the dates of the opinions, it is apparent that, in Singleton, both the first and the second lawsuits were brought well within five years of the September 1, 1999 default.

[17] The Florida Supreme Court's jurisdiction arose from a conflict between the Fourth District Court of Appeal's decision in Singleton and a Second District Court of Appeal decision, Stadler v. Cherry Hill Developers, 150 So. 2d 468 (Fla. 2d DCA 1963). Stadler is also not a statute of limitations case. In fact, in Stadler the court concluded that *res judicata* barred the mortgagee's second lawsuit, filed a mere thirteen months after the filing of the first lawsuit which was dismissed with prejudice by the trial court.

acceleration of the balance due based upon the same default may bar a subsequent action on that default, an acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue." Id.

Critical to understanding Singleton's precedential value to the instant case – and how the majority opinion misinterprets same – is the following language from Singleton whereby the Court provides an illustration of when *res judicata* would not bar a second foreclosure case based on a subsequent default:

> For example, a mortgagor may prevail in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or that the mortgagee had waived reliance on the defaults. In those instances, the mortgagor and mortgagee are simply placed back in the same contractual relationship with the same continuing obligations. Hence, **an adjudication denying acceleration and foreclosure** under those circumstances should not bar a subsequent action a year later if the mortgagor ignores her obligations on the mortgage and a valid default can be proven.

Id. (emphasis added)[18]

In other words, if the lender is unsuccessful in its foreclosure action – **resulting in an adjudication denying acceleration and foreclosure** – the parties are placed back into their same contractual relationship (that is, the installment nature of the loan is reinstated) and the doctrine of *res judicata* will not preclude a lender lawsuit based on a **subsequent borrower non-payment default**.[19]

[18] In the Court's illustration, the lender's subsequent lawsuit is filed "a year later." Surely, had the Singleton Court intended to upend statute of limitations foreclosure law – as does the majority's interpretation of Singleton – the Court could have employed a hypothetical implicating the five-year statute of limitations.

*(ii)  The majority's construction of <u>Singleton</u> impermissibly rewrites the parties' contracts*

The majority reads <u>Singleton</u> for the proposition that, despite a lender's acceleration, a borrower's obligation to pay – and a lender's obligation to accept – monthly post-acceleration installment payments continues; that is, there can be multiple, post-acceleration non-payment defaults, and multiple, post-acceleration accelerations, on the same note.

Consequently, under the majority's holding, when a borrower fails to make one of these post-acceleration monthly installment payments, a subsequent default

---

[19] This holding makes perfect sense in the context of *res judicata* law. If, for example, a lender sues a borrower, accelerates, and alleges that a particular payment was not paid, and the borrower is able to establish that the payment was made, the *res judicata* effect of that adjudication for the borrower would bar the lender from again suing on **that** alleged missed payment. Because that adjudication denied the lender's acceleration and foreclosure (and placed the parties back into their contractual relationship), the *res judicata* doctrine would not preclude the lender from suing the borrower for a later missed payment (a subsequent and separate default).

Alternately, if, for example, the borrower successfully defends a foreclosure action asserting he never signed the note or mortgage, or never received the loan proceeds (that is, the parties never had a contractual relationship), the *res judicata* effect of **that** adjudication – which obviously would not place the parties back into any contractual relationship – would likely forever preclude the lender from again suing that borrower on that note.

While, in both of these examples, the mortgagor prevailed in the litigation, the resulting adjudications' effect on the parties' relationship is vastly different. By simply concluding that **all** dismissals reinstate the installment nature of the loan, the majority significantly distorts <u>Singleton</u> and discounts the dramatic variances that can result from different dismissal orders.

has occurred, entitling the lender to accelerate **again** based on this subsequent default.

Yet, nowhere does <u>Singleton</u> say this; and, most certainly, nowhere do the parties' contract documents say this.

(a) Installment nature of loan terminates upon lender acceleration

The plain language of the Beauvais promissory note and mortgage establishes that, once the borrower defaults on a monthly payment and the lender accelerates, the borrower is obligated to pay immediately **all** sums due under the note.

The loan's installment nature is clearly and unequivocally spelled out in paragraph 3 of Beauvais's note (captioned "PAYMENTS"), requiring Beauvais to make monthly payments to retire his $1,440,000 indebtedness.

Paragraph 6 of the note (captioned, "BORROWER'S FAILURE TO PAY AS REQUIRED") expressly provides that if Beauvais defaults by failing to pay a monthly installment payment, and does not pay the "overdue amount by a certain date," then "the Note Holder may **require me to pay immediately the full amount of Principal** which has not been paid and all the interest that I owe on that amount." (emphasis added)

Paragraph 22 of the mortgage securing the note (captioned, "**Acceleration; Remedies**.") contains virtually identical acceleration language: "If the default is

not cured on or before the date specified in the notice, Lender at its option may **require immediate payment in full of all sums secured by this Security Instrument** without further demand and may foreclose this Security Instrument by judicial proceeding." (emphasis added)

Similarly, Paragraph 10 of the note (captioned "UNIFORM SECURED NOTE"), describing the acceleration provisions of the mortgage securing the note (the Security Instrument) reads, in relevant part, as follows: "That Security Instrument describes how and under what conditions **I may be required to make immediate payment in full of all amounts I owe under this Note**." (emphasis added)

As these documents clearly and unequivocally provide, once the lender exercises its option to require the borrower to pay immediately **all** amounts due under the note, the installment nature of the note terminates.

This construction of the parties' contract documents is expressly reinforced in the mortgage's reinstatement provision (paragraph 19 of the mortgage captioned, "**Borrower's Right to Reinstate After Acceleration.**"). This post-acceleration provision requires the lender to reinstate the installment nature of the note – "as if no acceleration had occurred" – upon the defaulting borrower paying to the lender specifically defined "reinstatement sums and expenses," so long as such payment occurs prior to the entry of any foreclosure judgment.[20]

Obviously, this reinstatement provision would be unnecessary and meaningless if, as the majority concludes, <u>Singleton</u> requires the installment nature of the note to continue after a lender accelerates. If, under <u>Singleton</u>, monthly installment payments continue to become due after acceleration, what is being "reinstated?"

<u>Singleton</u> should not be read in such a way as to render this reinstatement provision meaningless. <u>See</u> <u>Bethany Trace Owners' Ass'n, Inc. v. Whispering Lakes I, LLC</u>, 155 So. 3d 1188, 1191 (Fla. 2d DCA 2014) ("When interpreting contractual provisions, courts 'will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so.'") (citation omitted).

Plainly, per the parties' contract documents, after acceleration the borrower no longer enjoys the contractual right to repay the loan in monthly installments because the lender has exercised its contractual right to require the borrower **immediately** to repay the entire loan.

---

[20] The mortgage's reinstatement provision requires a borrower to exercise his post-acceleration reinstatement right **prior to** the entry of a foreclosure judgment. To the extent that the majority opinion somehow views acceleration as occurring only upon entry of a foreclosure judgment for the lender, such an interpretation would render this paragraph's timing provisions meaningless. Indeed, if acceleration occurs only upon judgment, and the borrower must exercise his reinstatement right after acceleration, but before entry of the judgment, the borrower's reinstatement right would be illusory.

(b) Majority creates post-acceleration fiction and "new" reinstatement provision

The majority's court-imposed fiction that, after acceleration, subsequent monthly installment payments somehow continue to become due is not only contrary to the parties' contract documents, it is simply fanciful.[21] A borrower's monthly installment payment obligations and a lender's acceleration after default do not, and cannot, coexist.[22]

_____

[21] The majority's conclusion is also irreconcilable with decades of case law holding that a loan acceleration – whether automatic or exercised at the option of the lender – causes the entire indebtedness immediately to become due. Baader v. Walker, 153 So. 2d 51, 54 (Fla. 2d DCA 1963) (holding that lender's agent authorized to collect full amount of indebtedness after borrower's default on installment payment because note contained automatic acceleration provision); Cook v. Merrifield, 335 So. 2d 297 (Fla. 1st DCA 1976) (holding that in the absence of acceleration option, entire indebtedness became due upon borrower default as a product of automatic acceleration provision); cf. Home Credit Co. v. E.B. Brown, 148 So. 2d 257, 260 (Fla. 1962) (finding note to be usurious because lender had option to accelerate full amount of note plus interest; computation under usury law based on lender's contractual right to accelerate even if lender chooses not to exercise full acceleration right). Nothing in this line of cases remotely suggests that, after acceleration, monthly installment payments continue to become due giving rise to successive accelerations. To tell a borrower that he owes everything immediately, and also owes next month's installment payment, makes little sense.

[22] Oddly, the majority opinion cites to the non-waiver provisions of the note (paragraph 6) and mortgage (paragraph 12) as somehow supporting the notion that the installment nature of the note survives acceleration. See majority opinion at 15-17. These provisions say just the opposite: if the mortgagee accepts payments after acceleration, such acceptance shall not constitute a waiver of the mortgagee's rights.

The typical lender's practice is to refuse to accept a borrower's monthly installment payments after the lender has exercised acceleration. If, as the majority concludes, acceleration does not transform the installment nature of the note and

The majority opinion rewrites the parties' note and mortgage to create a reinstatement provision – i.e., reinstating the installment nature of the note, as if acceleration never occurred, upon any dismissal of any lawsuit – that the parties did not include when drafting their documents. <u>Singleton</u> does not say this; the parties' contract documents certainly do not say this; and Florida law is repugnant to the majority's insertion of a provision into the parties' private contract that the parties themselves most assuredly omitted.[23]

> *(iii) The majority's construction of <u>Singleton</u> jettisons <u>Singleton</u>'s express*
>
> *presupposition that an adjudication denying acceleration is required for any*
>
> *"subsequent and separate alleged default" to exist*

In order for an adjudication to place the parties "back in the same contractual relationship with the same continuing obligations," so that subsequent non-payment defaults would exist, <u>Singleton</u> insists upon "an adjudication denying acceleration and foreclosure."[24]

Yet, according to the majority opinion, after **any** dismissal of a foreclosure action, the parties are returned to their pre-acceleration positions. <u>See</u> majority

---

advance the note's maturity date to the date of acceleration, not only would this non-waiver provision be entirely unnecessary, but a lender's refusal to accept post-acceleration installment payments could constitute a lender breach.

[23] <u>Brooks v. Green</u>, 993 So. 2d 58, 61 (Fla. 1st DCA 2008) (holding that a court is without authority to rewrite a clear and unambiguous contract between parties).

[24] <u>Singleton</u>, 882 So. 2d at 1007.

opinion at 16. Then, unburdened by Florida's statute of limitations, the lender is free to: (i) treat its prior acceleration as a nullity, (ii) pick another month as the "new" default date,[25] and (iii) bring a new foreclosure action at any time seeking the identical sums sought in the dismissed lawsuit.

Again though, <u>Singleton</u> does not say this. Explicit in <u>Singleton</u> is that, in order to reinstate the parties' previous contractual relationship so that subsequent defaults may occur, the trial court's adjudication of the first foreclosure action **must deny the lender's acceleration**. <u>Singleton</u>, 882 So. 2d at 1007. Otherwise, without such an adjudication denying acceleration, the lender's affirmative, contractually prescribed acceleration remains unaffected.

The majority's overbroad construction of <u>Singleton</u> not only undermines this crucial aspect of <u>Singleton</u>, but also, as more particularly described in section III.C.*(i)*, below, visits unprecedented adjudicatory effect upon a form dismissal order.

C. *<u>The Majority Opinion Subverts Dismissal Law and Statute of Limitations Jurisprudence in Foreclosure Cases</u>*

As I describe in the three subsections below, the majority's interpretation of <u>Singleton</u> fundamentally alters, in a foreclosure setting, both Florida dismissal law

---

[25] According to the majority opinion, the "new" default date alleged in the second lawsuit must be within five years of the filing of the second lawsuit.

and statute of limitations jurisprudence in profound, and certainly unintended, ways.

*(i) The majority opinion visits upon a form dismissal order an array of inferred adjudications*

The trial court's December 6, 2010 case management conference dismissal order – a form order – states: "The Plaintiff failed to appear without explanation. Therefore, this case is dismissed without prejudice."

According to the majority, this simple form dismissal order, by operation of law, and without a scintilla of record support evidencing any such intention by the trial court: (i) nullified the lender's January 22, 2007 acceleration;[26] (ii) reinstated the installment nature of the loan; (iii) placed the parties back into their pre-acceleration positions, allowing Beauvais to make, and requiring Deutsche Bank to accept, monthly installment payments; and (iv) reset the note's maturity date to March 1, 2036.

Yet the trial court's form dismissal order **adjudicated nothing**. It simply dismissed the plaintiff's action, requiring the plaintiff to file a new lawsuit if the plaintiff wished to proceed with the action.

_____

[26] The majority's implicit, entirely court-created conclusion that the trial court's form dismissal order affects – much less nullifies – AHMS's acceleration is nothing short of remarkable. At no time in the case below, or on appeal, has any party challenged the effectiveness of AHMS's January 22, 2007 acceleration of Beauvais's note.

Indeed, the dismissal was without prejudice so it would not have had *res judicata* effect even if Deutsche Bank's second foreclosure lawsuit were to have alleged the exact same breach. Markow v. Am. Bay Colony, Inc., 478 So. 2d 413 (Fla. 3d DCA 1986). It certainly was not an "adjudication denying acceleration and foreclosure" so as to place the parties back into their prior contractual provisions, as expressly contemplated by Singleton.

To illustrate the significant problem with the majority's conclusion in this regard, assume the following scenario: after the trial court announces the dismissal of the lender's foreclosure case for failure to attend the trial, the borrower's counsel requests the trial court to enter an *ex parte* order nullifying the lender's prior acceleration and reinstating the installment nature of the borrower's loan.

The trial court reviews the mortgage's detailed reinstatement provision (paragraph 19), and asks the borrower's counsel whether the borrower has cured all defaults and paid the lender all expenses, as is expressly required for a borrower to reinstate a loan. The borrower's counsel responds that the borrower has paid nothing to the lender in years and still owes tens, if not hundreds, of thousands of dollars to the lender.

Armed with this information, the trial court then grants the borrower's motion, nullifies acceleration and reinstates the installment nature of the loan. Clearly, no trial judge would ever enter such an order and, in the unlikely event

such an order were entered, presumably it would be dead on arrival in any appellate court.

Yet the majority opinion's conclusion that the trial court's form dismissal order nullified the prior acceleration and reinstated Beauvais's loan does precisely what no trial judge would ever do. In my view, this conclusion turns procedural fairness on its head by giving the sanctioned party (the lender) the after-the-fact benefit of reinstatement: a remedy that the prevailing party (the borrower) never would receive.

In my view, the majority traverses a dangerously slippery slope. We should be reluctant to hold that a trial court's form dismissal order visits upon the borrower and lender a host of critical, yet unarticulated, adjudications that fundamentally change the parties' contractual relationship and are entirely unsupported by the existing law or by the record below.

*(ii) The majority opinion effectively rewrites the statute of limitations in foreclosure cases*

The majority opinion states: "under <u>Singleton</u>, dismissal of a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action accelerating payment on a later default if the subsequent default occurred within five years of the subsequent action and acceleration." <u>See</u> majority opinion

at 29 (paragraph 2). The majority supports this notion with citation to several, recent cases. See majority opinion at 12-13.

These cases implicitly hold what no Florida court, and certainly not the Singleton court, has ever explicitly held before: that payment default and not acceleration constitute the last element of a foreclosure cause of action. Despite the majority's characterization otherwise, this holding marks an upheaval of well-established Florida law.

In a foreclosure case such as this one, where the lender has exercised its contractual right to accelerate, the last element of the cause of action – triggering the running of the five-year statute of limitations – is the lender's affirmative act of acceleration, **not** the borrower's missed payment. Monte v. Tipton, 612 So. 2d at 716 (declaring that the statute of limitations begins to run upon notice of acceleration, while noting that the initial payment default occurred more than fifteen years prior to the notice of acceleration); see also Penagos v. Capital Bank, 766 So. 2d 1089 (Fla. 3d DCA 2000).[27]

Recognizing that the lender's notice of acceleration, and not the borrower's payment default, triggers the statute of limitations, the note and mortgage in this

---

[27] Presumably, if the lender's action sought only recoupment of missed payments, rather than the accelerated amount of the loan, then the borrower's default would constitute the last element of the cause of action. In this case, however, as a practical matter, lenders exercise their right to accelerate immediately prior to, or contemporaneously with, their foreclosure action. In such a case, the date of the borrower's default is irrelevant to the statute of limitations inquiry.

case expressly reflect that the lender's forbearance in exercising its right to accelerate does not constitute a waiver of its right to accelerate later.[28] Requiring lender acceleration and the filing of the lender's foreclosure action to occur within five years of a default eviscerates these express contract provisions.[29]

Finally, the majority states: "We . . . conclude that dismissal of a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action on a later default **if the subsequent default occurred within five years of the subsequent action**." See majority opinion at 12. Yet the majority fails to explain how its conclusion would require reversal in this case.  In this case, the lender's subsequent action was brought on December 18, 2012, which alleged that the subsequent default had occurred on October 1, 2006. Even assuming that both the majority's rewrite of the statute of limitations and the parties' contract correctly express the state of the law (which, in my view, it does not), plainly Deutsche

---

[28] Paragraph 6(D) of the note reads, in its entirety, as follows: "**No Waiver By Note Holde**r . . . Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time." Similarly, paragraph 12 of the mortgage reads, in relevant part, as follows: "Any forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy."

[29] It appears that the majority might have confused a lender's forbearance of a contractual right with a lender's exercise of a contractual right. See majority opinion at 29 (paragraph 1). In this case, the lender did not forbear (or waive) the exercise of its contractual right to accelerate; the lender affirmatively exercised its contractual right to accelerate on January 22, 2007.

Bank's subsequent action was not brought within five years of the alleged subsequent default.

*(iii) The majority opinion conflates the statute of repose with the statute of limitations*

The practical effect of the majority's opinion is to conflate the statute of repose for foreclosure actions (section 95.281 of the Florida Statutes) with the statute of limitations for foreclosure actions.[30]

Under the majority's opinion, the only time a statute of limitations defense conceivably could be effective is when a lender tries to bring a foreclosure action more than five years after the maturity date expressed on the face of the note and mortgage. Yet, this is precisely what the legislature has already done by enacting section 95.281(1)(a), the statute of repose for foreclosure actions.

---

[30] A cause of action accrues, and the statute of limitations begins to run, when the last element of the cause of action occurs. § 95.031(1), Fla. Stat. (2014). A statute of repose operates to set a time limit on a cause of action when the last element of the cause of action occurs beyond the repose statute's outside date. Am. Bankers Life Assurance Co. of Fla. v. 2275 West Corp., 905 So. 2d 189 (Fla. 3d DCA 2005. In a foreclosure action, the statute of limitations precludes an action to collect the debt if the action is brought more than five years from lender acceleration; while the statute of repose "establishes an ultimate date when the lien of the mortgage terminates and is no longer enforceable." Houck Corp. v. New River, Ltd., Pasco, 900 So. 2d 601 (Fla. 2d DCA 2005). In this case, because the maturity date is evident from the face of the mortgage (March 1, 2036), section 95.281(1)(a) sets this "ultimate" date as March 1, 2041.

This provision reads, in relevant part, as follows: "(1) The lien of a mortgage . . . shall terminate . . . 5 years after the date of maturity." § 95.281(1)(a), Fla. Stat. (2013).

If it had been the intent of the legislature to render acceleration meaningless, so that the statute of limitations and the statute of repose for foreclosure actions were identical, the statute of repose would have been unnecessary. In other words, by allowing the lender's acceleration and potential re-accelerations to keep delaying the operation of the statute of limitations, the majority establishes the note's maturity date as the only date that can trigger application of the five-year statute of limitations. The statute of limitations and the statute of repose, absurdly, would shake hands on March 1, 2041.

**IV. _Singleton_ Distinguished and Harmonized**

_A. Singleton's Equitable Considerations Are Irrelevant to this Court's Statute of Limitations Inquiry_

Because Singleton is a _res judicata_ case and not a statute of limitations case, equitable principles expressly underpin Singleton's holding. Id. at 1007-08.[31] In

---

[31] Aeacus Real Estate Ltd. P'ship v. 5th Ave. Real Estate Dev., Inc., 948 So. 2d 834, 836 (Fla. 4th DCA 2007) (observing that _res judicata_ is an equitable doctrine). _Res judicata_ is a judicially-created principle, rooted in equity, and "will not be invoked where it would defeat the ends of justice." State v. McBride, 848 So. 2d 287, 291 (Fla. 2003).

fact, it was upon this very foundation that the Florida Supreme Court rested its

decision in Singleton:

> We must also remember that foreclosure is an equitable remedy and there may be some tension between a court's authority to adjudicate the equities and the legal doctrine of res judicata. The ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage. See deCancino v. E. Airlines, Inc., 283 So. 2d 97, 98 (Fla. 1973) ("[T]he doctrine [of *res judicata*] will not be invoked where it will work an injustice. . . .").

Singleton, 882 So. 2d at 1008 (alteration in original).

By contrast, statutes of limitations are "fixed limitations on actions. . .

predicated on public policy and are a product of modern legislative, rather than

judicial processes." Major League Baseball v. Morsani, 790 So. 2d 1071, 1074

(Fla. 2001).

Equitable considerations, while relevant to the Supreme Court's *res judicata*

analysis in Singleton, are entirely irrelevant to cases (such as this) involving the

application of a statute of limitations.[32] Proper application of a statute of

---

[32] In fact, section 95.051(1)(f) of the Florida Statutes expressly provides that only "[t]he payment of any part of the principal or interest of any obligation or liability founded on a written instrument" tolls the five-year statute of limitations. Section 95.051(2) limits statute of limitations tolling to the reasons specified in section 95.051(1)(a)-(i). HCA Health Servs. of Fla., Inc. v. Hillman, 906 So. 2d 1094, 1100-01 (Fla. 2d DCA 2004) (providing that the legislature's enactment of section 95.051 establishes exclusive list of conditions that can toll a statute of limitations, effectively eliminating the concept of "equitable tolling"). The majority's sweeping interpretation of Singleton – holding that a borrower's installment payments continue after acceleration – disregards section 95.051(1)(f) altogether.

limitations may by its very nature mean a plaintiff is barred from maintaining a suit that is otherwise meritorious. Nevertheless, the statute of limitations is the province of the legislative branch, and this Court's equitable powers (which may be exercised appropriately in the *res judicata* context) have no place in a statute of limitations analysis. As the Florida Supreme Court held more than eighty years ago:

> Statutes should, when reasonably possible, be so construed as not to conflict with the Constitution or with long and well settled legal principles, but the language of this statute, considering it as a whole, cannot be given its apparent meaning and purpose without upsetting to some extent the principle of res judicata, and thus creating a somewhat anomalous situation, which will in some cases require a circuit judge to grant to a party a judgment at law on a cause of action, which, sitting as chancellor in a court of equity, he had already held such party was not, in equity and good conscience, entitled to enforce.

Cragin v. Ocean & Lake Realty Co., 133 So. 569, 573-74 (Fla. 1931); see also Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952) (holding that courts must presume that the legislature, in establishing a statute of limitations, "thoroughly considered and purposely preempted the field of exceptions to, and possible reasons for tolling, the statute. We cannot write into the law any other exception, nor can we create by judicial fiat a reason or reasons, for tolling the statute since the legislature dealt with such topic and thereby foreclosed judicial enlargement thereof.").

Yet it seems that equitable considerations – rather than any explicit pronouncement in <u>Singleton</u> – fuel the majority opinion's sweeping construction of <u>Singleton</u> to the detriment of well-established precedent.

Regrettably, the lure of equity diverts the majority from a proper distinguishing of <u>Singleton</u>, and causes the majority effectively to overrule cases that <u>Singleton</u> does not mention, much less disrupt. Examples abound.

B. *What Singleton Does Not Do*

<u>Singleton</u> does not overrule <u>Conner v. Coggins</u>, 349 So. 2d 780 (Fla. 1st DCA 1977), <u>Locke v. State Farm Fire & Casualty Co.</u>, 509 So. 2d 1375 (Fla. 1st DCA 1987), or <u>Monte v. Tipton,</u> 612 So. 2d 714 (Fla. 2d DCA 1993). <u>Singleton</u> does not stand for the proposition that a lender's acceleration is irrelevant to the calculation of the statute of limitations.

<u>Singleton</u> does not overrule <u>Erwin v. Crandall,</u> 175 So. 862 (Fla. 1937), <u>Casino Espanol de la Habana, Inc. v. Bussel</u>, 566 So. 2d 1313, 1314 (Fla. 3d DCA 1990), or <u>Greene v. Bursey</u>, 733 So. 2d 1111, 1114-15 (Fla. 4th DCA 1999) (holding that entire debt becomes due, and loan's maturity date is advanced, when the creditor takes affirmative action to alert the debtor that creditor has exercised option to accelerate). <u>Singleton</u> does not stand for the proposition that a lender's acceleration does not advance the note's maturity date.

Singleton does not overrule Baader v. Walker, 153 So.2d 51 (Fla. 2nd DCA 1963), or Cook v. Merrifield, 335 So. 2d 297 (Fla. 1st DCA 1976). Singleton does not stand for the proposition that, despite a lender's acceleration, a mortgagor's obligation to pay – and a mortgagee's corresponding obligation to accept – monthly installment payments continue.

Yet, relying on Singleton, the majority opinion makes each of these significant, unsupported leaps, as if Singleton, *sub silentio*, overturned decades of jurisprudence.[33]

### C. *Harmonizing Singleton; Employing an Inquiry Consistent with Precedent*

In my view, it is incumbent upon the district courts to apply Florida Supreme Court precedent in such a way as not to produce a wholesale upheaval of well-established law. A far more restrained reading of Singleton – in harmony, and not at odds, with Florida case law regarding lender acceleration and the statute of limitations – is more compatible with a district court's place in Florida's court hierarchy.

Thus, consistent with Singleton and decades of Florida statute of limitations case law, I suggest that the following inquiry be employed when, as in the instant case, both the first foreclosure action's dismissal order and the parties' contract documents are silent as to whether the dismissal has effected reinstatement: the

[33] Puryear v. State, 810 So. 2d 901, 905 (Fla. 2002) ("We take this opportunity to expressly state that this Court does not intentionally overrule itself sub silentio.").

court must consider relevant and highly probative, contemporaneous and post-dismissal factors to determine whether the prior case's adjudication **actually** reinstated the installment nature of the loan. Such factors include: (i) whether the lender's internal records treated the loan as being reinstated; (ii) how the lender characterized the loan for reporting purposes to any regulator; (iii) if, when, and how the lender communicated reinstatement to the borrower; (iv) how the lender treated any post-dismissal installment payments tendered by the borrower; and (v) the nature of any other post-dismissal communications between the lender and borrower.[34]

In the instant case, the record is devoid of any evidence indicating that, at any time contemporaneous with the December 6, 2010 dismissal, either party treated the trial court's form dismissal order as a reinstatement of the installment nature of the loan.[35] In sum, after the dismissal of the first case in 2010, the parties

---

[34] I recognize that the inquiry I suggest here is more nuanced than the inquiry suggested by the panel opinion with which I concurred. The panel opinion suggested a more formulaic approach to determining whether dismissal of the prior action reinstated the installment nature of the loan, i.e., a dismissal without prejudice does not reinstate the loan, while a dismissal with prejudice does reinstate the loan. Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575 (Fla. 3d DCA Dec. 17, 2014). This reflected a thoughtful attempt to distinguish Singleton's equity-based *res judicata* analysis and to avoid an extension of Singleton to the case at bar; however, I am left with little choice but to expound fully upon the inapplicability of Singleton in this context.

[35] My approach is hardly novel. In order to avoid summary judgment on a statute of limitations defense, New York's appellate courts – certainly not outliers in the mortgage foreclosure arena – require an affirmative revocation of a lender

did not reinstate the installment nature of the loan; the contract documents did not reinstate the installment nature of the loan; and the trial court did not reinstate the installment nature of the loan. Why should we?

## V.    Conclusion

I am not unmindful of the moral imperative driving both the majority's opinion and a host of other State appellate court and federal decisions: borrowers should pay their mortgage obligations. The expiration of a statute of limitations, however, generally results in a windfall for the escaping defendant.  In my view, neither the moral imperative that borrowers pay their obligations, nor Singleton, has abrogated decades of Florida jurisprudence governing the statute of limitations in foreclosure cases. I would affirm that part of the trial court's final judgment holding that the statute of limitations precludes Deutsche Bank's foreclosure action.

SHEPHERD, SALTER and EMAS, JJ., concur.

---

acceleration prior to the expiration of the statute of limitations. See e.g.  EMC Mortg. Corp. v. Patella, 720 N.Y.S.2d 161 (N.Y. App. Div. 2001).